CHARLES L. HAZELTON & SON, INC. vs. C. SUMNER TEEL
& another, executors, & others
(and a companion case[1]).

Suffolk.    October 5, 1965. — November 1, 1965.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

*Contract,* Construction, Building contract, Cost-plus contract, Perform-
ance and breach. *Practice, Civil,* Exceptions: saving of exception;
Special question to jury; Charge to jury; Question by judge; Comment
by judge. *Law or Fact. Evidence,* Judicial discretion, Photograph.
*Deceit.*

Exceptions as to the form and substance of a special question to the jury
and of the charge on the question were not seasonably taken after the
jury had answered the question.   [620]
A trial judge followed a proper procedure in submitting to the jury a
special question on a material issue as to which he gave the parties an
opportunity to argue, and in charging at that time only on that issue,
reserving the completion of the charge until the jury had answered the
question.   [620]
There was no error on the part of the trial judge in an action of contract
in characterizing a certain written proposal to do work "as an offer
and as an estimate which amounted to an opinion."   [621]
After the jury in an action for work performed had answered in the
affirmative a special question in substance whether a certain written
proposal by the plaintiff for the work embodied the terms of the parties'
contract, it was for the court, not the jury, to interpret those terms.
[621]
A contract between the owners of a wharf and a contractor for repairs to
the wharf, based on a written proposal by the contractor stating that
the work would "be done on a labor, materials and equipment charge
basis, plus overhead, supervision and profit percentage," that the con-
tractor "would estimate" that the expense of labor, materials, rental of
equipment and other items "would approximate" a specified amount, and
that such percentage would be "in addition," was an unambiguous cost-
plus contract and not a contract for a fixed price.   [621]

---

[1] East Coast Realty Corp. *vs.* Charles L. Hazelton & Son, Inc. By agree-
ment of the parties and with the consent of the court both actions were tried
as if the individual defendants in the first action were in fact the plaintiffs in
the cross-action.   The defendants in the first action were Isadore Bromfield,
Richard S. Robie, and Allen Sturges.   After the action was brought, Sturges
died, and his executors, C. Sumner Teel and C. Terry Collens, were substituted
as parties.

No denial of a "fair and impartial trial" of an action resulted from the judge's asking witnesses questions designed to clarify testimony or to obtain aid in making a ruling, or from the judge's forceful comments on the correctness of his rulings and the behavior of counsel when considered in context.  [621]

No abuse of discretion on the part of the judge at the trial of cross-actions by a contractor and the owners of a wharf respecting repairs to the wharf appeared in the exclusion or limitation of the use of certain photographs of the wharf, or in the exclusion of a question to a civil engineer whether what he saw two years after the repairs were made represented first-class workmanship in the year they were made.  [621–622]

In an action against a contractor for breach of a cost-plus contract to repair a wharf in a workmanlike manner, a verdict was properly directed for the defendant where it appeared that items of alleged defective work were "de minimis" and that no charge had been made by the defendant for work not completed.  [622–623]

In an action for deceit by the owners of a wharf against a contractor based upon an alleged misrepresentation by the defendant of the cost of repairing the wharf, a verdict was properly directed for the defendant where the evidence showed that a cost figure given by the defendant to the plaintiffs was his best estimate as to the cost of repairs apparently necessary upon a preliminary inspection and that he was aware that further investigation might reveal the need for additional work, and there was no evidence that he knew his estimate to be false.  [623]

CONTRACT.  Writ of Charles L. Hazelton & Son, Inc. in the Superior Court dated February 18, 1959.

CONTRACT AND TORT.  Writ of East Coast Realty Corp. in the Municipal Court of the City of Boston dated March 3, 1961.

Upon removal of the Municipal Court action to the Superior Court the actions were tried together before *J. V. Sullivan*, J.

*Jerome P. Facher* (*Martin S. Kaplan* with him) for C. Sumner Teel & another, executors, & others.

*James Charles Roy* for Charles L. Hazelton & Son, Inc.

SPIEGEL, J.  The plaintiff, Charles L. Hazelton & Son, Inc. (hereinafter referred to as the Corporation), in one action seeks to recover payment from the owners of a wharf (hereinafter referred to as the Owners) for certain repairs to the wharf.  The other is a cross-action by the Owners in two counts, one in contract and the other in tort for deceit, seeking to recover damages from the Corporation.  The

cases were consolidated for trial to a jury. In the first action the jury returned a verdict favorable to the Corporation; in the second action the trial judge directed a verdict for the Corporation. The cases are here on the Owners' exceptions.

The Corporation presented in evidence a written proposal submitted (early in 1958) by its president, C. Kenneth Hazelton, to Isadore Bromfield, one of the Owners. The proposal stated the work to be done and specified conditions including "A — All work to be done on a labor, materials and equipment charge basis, plus overhead, supervision and profit percentage." After detailing rates for rental and labor, the proposal concluded: "We would estimate that the labor, lumber, piles, equipment rental, insurance and tax on labor costs, for the wharf repairs only, would approximate $16,600.00. . . . Overhead, supervision and profit percentages would be in addition to the figures above for that part of the work that is accomplished. . . . All work to be done in a first class workmanlike manner."

Hazelton testified for the Corporation that the parties agreed on the proposal to repair the wharf on a cost-plus basis.

Bromfield testified that as agent for the Owners he had agreed with Hazelton on a fixed price for putting the wharf in fair condition suitable for driving trucks over it, and he thought the proposal merely set the price at $16,600. There was further evidence which need not be stated here to support the view of each side.

Bromfield and one Gould, a civil engineer, testified in substance that the job was incomplete because much of the decking, some cap logs, and several piles were not replaced, and that there was poor workmanship because some spikes did not go into the stringer. Gould also stated that a bolster between a pile and a pile cap failed to support a stringer properly, and that, although a photograph showed a truck on the dock, there was an insufficient "factor of safety" to support such a truck.

At the conclusion of the evidence, the judge directed a verdict against the Owners in their cross-action. In the

remaining action the judge submitted to the jury the following special question: "Do you find the necessary facts established by a fair preponderance of the evidence that there was a meeting of the minds of Isadore Bromfield and Charles L. Hazelton Company, and that work proceeded under the terms of the estimate; and that the estimate was adopted by both parties as the basis for their agreement?"

It is not disputed that the parties were afforded an opportunity, before the jury retired to consider the question, to argue to the jury the evidence upon which the answer to the question was predicated.

The judge gave a charge to the jury with respect to the question, and stated to the jury that he would, if necessary, complete his charge dependent upon the jury's answer to the question.

The Owners then took exceptions to the judge's "putting a special question to the jury at this stage of the proceeding, and to the Court's failure to charge with respect to the entire case at that time." The Owners also excepted to the judge's "characterizing . . . [the proposal] as an offer and as an estimate which amounted to an opinion." The Owners at that time did not take any other exceptions to the charge or to the form and substance of the special question. The jury answered the question in the affirmative. After the jury had answered the question the Owners then took exceptions to the form and substance of the charge and the question. Objections must be made promptly to enable a trial judge to rectify any errors. *Harrigan* v. *Metropolitan Transit Authy.* 329 Mass. 637, 640.

The procedure followed by the judge was proper. "It is within the discretion of a trial judge to submit to the jury for answer a special question upon an issue which is material to the case and triable by them and upon which there is evidence for their consideration." *Cozzo* v. *Atlantic Ref. Co.* 299 Mass. 260, 264. See *Hinckley* v. *Capital Motor Transp. Co. Inc.* 321 Mass. 174. In such a case, the judge is required to give only such instructions as are necessary to enable the jury to understand their duty relative to answering the question submitted.

We perceive no merit in the contention of the Owners that the judge was in error in characterizing the proposal "as an offer and as an estimate which amounted to an opinion."

After the jury returned their answer to the question, the judge charged the jury on the question of damages on the basis of a cost-plus contract. The Owners contend that the judge could not rule that there was a cost-plus contract without submitting further issues to the jury. We are satisfied that the jury understood the question to be whether the proposal embodied the terms of the contract. The interpretation of the terms of the contract was a matter for the court and not the jury. See *Tri-City Concrete Co. Inc.* v. *A. L. A. Constr. Co.* 343 Mass. 425. Since the jury found that the proposal embodied the agreement, the judge properly determined that the proposal was an unambiguous cost-plus contract.

The Owners further contend that their right to a fair and impartial trial was prejudiced by comments and questions of the judge.

The judge asked several questions designed either to clarify testimony or to obtain aid in making a ruling on a matter of law. He also commented forcefully on the correctness of his rulings and the behavior of counsel. The comments of the judge were in response to needless cross-examination and persistent violations of the purport of his rulings. It is the role of a judge to strive for some measure of order and expedition in the trial while upholding the dignity and authority of the court. The remarks of the judge isolated from the transcript as a whole may appear somewhat intemperate, but considering them in the context in which they were uttered and viewing the record in its entirety we cannot say that the Owners were denied their right to a "fair and impartial trial." Cf. *Salter* v. *Leventhal,* 337 Mass. 679, 695, 696; *Greenberg* v. *Weisman,* 345 Mass. 700.

The Owners excepted to the exclusion of photographs taken in 1961, the refusal to permit testimony by Gould that

photographs taken in 1959 were a fair representation of conditions in 1960, and the refusal to admit the 1959 photographs as a fair representation of conditions in 1958.

The judge admitted in evidence the photographs taken in 1959 "as conditions that existed a year after the alleged completion," but not "as conditions which existed as of July 1958." It was for the judge to determine whether the photographs reflected the situation fairly and whether they were likely to be of sufficient assistance to the jury. This was a discretionary matter. *Horowitz* v. *Bokron,* 337 Mass. 739, 742.

The material issue was the condition of the wharf in 1958. It was within the judge's discretion to exclude evidence of its condition in 1960 and 1961. See *White* v. *Mutual Fire Assur. Co.* 8 Gray, 566; *Murray* v. *Foster,* 343 Mass. 655, 657.

The Owners also excepted to the refusal of the trial judge to permit Gould to testify whether what he saw in 1960 represented first-class workmanship in 1958. There was no error. We note, however, that even if the testimony were admissible, no harm was done for Gould was permitted to testify to all items which he felt to be defective or unworkmanlike, and did testify that the work was not completely workmanlike.

The Owners argue that the direction of the verdict in the cross-action was error because there was evidence from which a jury could have found a breach of contract or deceit.

There was no evidence that the wharf failed to support cars or trucks. At most, the items of alleged defective or incomplete work were "de minimis." See *Lynch* v. *Culhane,* 237 Mass. 172; *Lantz* v. *Chandler,* 340 Mass. 348. In this connection, we note that the judge in his charge stated that in assessing damages, "if you find, of course, that this extra work that was done was not done in a workmanlike manner, of course, you can't follow Mr. Hazelton's theory. If you find it was done in a reasonable workmanship manner, then that is the amount."

Further, there could be no recovery for work not completed. The affirmative answer of the jury to the question determined that the written proposal for a cost-plus contract was adopted by the parties. No charge was made for the work which the Owners allege should have been done, and, therefore, the Owners cannot have suffered any damage.

Finally, the Owners contend that Hazelton admitted knowing that the figure of $16,600 in the proposal was insufficient to do the work outlined in the proposal, and that therefore it was error to direct a verdict for the defendant on the count for deceit. We do not agree. In context it is clear that $16,600 was Hazelton's best estimate as to the cost of repairs which a preliminary inspection had shown to be necessary, but that he was aware that further investigation might reveal the need for additional work. There was no evidence that Hazelton knew his estimate to be false.

*Exceptions overruled.*