LEWIS C. CLAPP *vs.* G. ARNOLD HAYNES & another[1] (and a companion case[2]). December 26, 1980. These cross appeals arise out of two actions for conversion (consolidated for trial and appeal) brought by the plaintiffs, Lewis C. Clapp (Clapp) and American Teaching Toys, Inc. (ATT), against the defendants, G. Arnold Haynes (Haynes) and Thomas D. Godino (Godino). The first trial of these actions in the Superior Court resulted in verdicts and judgments for the defendants which were subsequently set aside by the judge's allowance of the plaintiffs' motions for new trials. Mass.R.Civ.P. 59[a], 365 Mass. 827 (1974). The defendants have appealed from the denial of their motions for directed verdicts in the action brought by ATT (No. 334982) and from the orders granting new trials. At the second trial before a different judge, a verdict was directed for the defendants (Mass.R.Civ.P. 50[a], 365 Mass. 814 [1974]) in the action brought by Clapp (No. 334974). In ATT's action, the jury found against Haynes (assessing damages of $4,500) and for Godino. The plaintiffs have appealed from the judgments entered on the jury's verdicts. We affirm the orders made in connection with the first trial and reverse the judgments entered after the second trial.

1. The defendants contend that they were entitled to a directed verdict at the first trial of ATT's action because that corporation's adjudication as a bankrupt on July 23, 1974 (claimed to be based in part on an attachment of ATT's property by Haynes in June, 1973, in connection with a separate action for rent), was "res judicata" on the issue of the corporation's right to claim that the property had been converted on May 11, 1973. The defendants' argument on this point is not supported by any meaningful authority and could be rejected on that basis alone. See Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Lolos* v. *Berlin*, 338

---

[1] Thomas D. Godino.

[2] American Teaching Toys, Inc. *vs.* G. Arnold Haynes & another.

Mass. 10, 13-14 (1958); *Hathaway* v. *Hathaway*, 3 Mass. App. Ct. 727
(1975). In any event, there is nothing in the record which would justify a
conclusion that ATT's bankruptcy adjudication in 1974, or any of the
events leading up to that adjudication, would operate to preclude a claim
for conversion of corporate property based upon an improper termination
of the lease in May, 1973. See generally Restatement (Second) of Judg-
ments § 75 (Tent. Draft No. 7, 1980) and §§ 68, 68.1 (Tent. Draft No. 4,
1977). This is particularly so where the trustee in bankruptcy for ATT's
affairs was added to the case in a timely fashion as a party plaintiff. Apart
from the technical argument, there was more than sufficient evidence
under the governing standards (see *Alholm* v. *Wareham*, 371 Mass. 621,
627 [1976]) to warrant a conclusion by the jury that the defendants' ac-
tions in changing the locks on the leased premises and in seizing the cor-
poration's equipment and inventory amounted to an improper termina-
tion of the lease in violation of its terms and a wrongful exercise of domin-
ion and control over ATT's property. See *Scollard* v. *Brooks*, 170 Mass.
445, 448 (1898); *Row* v. *Home Sav. Bank*, 306 Mass. 522, 525 (1940);
Restatement (Second) Torts § 222A (1965); Prosser, Torts § 15, at 83-84
(4th ed. 1971). As in *Gidwani* v. *Wasserman*, 373 Mass. 162, 166 (1977),
the landlord's repossession was conditioned upon compliance with the
terms of the lease for breach of which the defendants were accountable in
damages. See also, Annot., Right of Landlord Legally Entitled to Posses-
sion to Dispossess Tenant Without Legal Process, 6 A.L.R.3d 177,
222-226 (1966). The motions for directed verdict were properly denied.

2. The judge based his grant of new trials on two grounds — one of
which was that the verdicts were against the weight of the evidence. The
granting of a new trial on this ground is within the trial judge's discretion.
*Perry* v. *Manufacturers Natl. Bank*, 315 Mass. 653, 656 (1944). *Fialkow*
v. *Devoe Motors, Inc.*, 359 Mass. 569, 576 (1971). Because the allowance
of a motion on this ground is intrinsically connected with the trial judge's
assessment of the witnesses and their credibility, an abuse of discretion
will "seldom be found," and the occasions where an appellate court in this
State has set aside the judge's conclusion that a new trial is required are
"exceedingly rare." *Hartmann* v. *Boston Herald-Traveler Corp.*, 323
Mass. 56, 61 (1948). See *Fialkow* v. *Devoe Motors, Inc.*, *supra* at
576-577; *Commonwealth* v. *Woods*, 382 Mass. 1, 8 (1980). We agree
with the judge's conclusion that the clear weight of all the evidence es-
tablished that the defendants had committed a conversion. Thus, we are
satisfied, after a review of the record of the first trial, that the judge did
"not act merely as a '13th juror' [to] set [the] verdict[s] aside simply
because he would have reached a different result had he been the trier of
facts." *Borras* v. *Sea-Land Serv., Inc.*, 586 F.2d 881, 887 (1st Cir. 1978).
His determination that the interests of justice required submission of the
issues to another jury was a proper exercise of his discretion.

We are also satisfied that the basis for the judge's action was stated with sufficient particularity. The present rule (Mass.R.Civ.P. 59[a], 365 Mass. 827 [1974]; see Smith & Zobel, Rules Practice § 59.2, at 442 [1977]) does not require a judge who grants a new trial to render "an analysis of the evidence and the inferences drawn therefrom which [led] . . . to his decision" when the basis for granting the new trial is that the verdict contravened the weight of the evidence. See formerly G. L. c. 231, § 128, as in effect prior to St. 1973, c. 1114, § 205. See also *Anti* v. *Boston Elev. Ry.*, 247 Mass. 1, 5 (1923); *Coughlan* v. *McGarvey*, 267 Mass. 49, 52 (1929). Since the judge acted properly in ruling on the ground just discussed, we need not address the validity of the second ground upon which the judge relied in granting a new trial.

3. The judge at the second trial refused on the question of damages to admit Clapp's testimony of the fair market value of his personal property (thereby creating a situation where verdicts had to be directed for the defendants in case No. 334974). The judge also excluded most of the same witness's testimony pertaining to the value of the corporate property that had been taken. Fair market value at the time and place of the conversion is the usual measure of damages for a wrongful seizure of property. *Joy Stevens* v. *Plymouth Finishing Co.*, 355 Mass. 390, 394 (1969). The definition of fair market value is the familiar one, i.e. "the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market." *Epstein* v. *Boston Housing Authy.*, 317 Mass. 297, 299-300 (1944). A witness is competent to testify to the value of his own property if he is sufficiently familiar with it and if he can demonstrate an understanding of the relevant standard of value. *Rubin* v. *Arlington*, 327 Mass. 382, 384 (1951). *Winthrop Prod. Corp.* v. *Elroth Co.*, 331 Mass. 83, 85 (1954). *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.*, 335 Mass. 189, 198 (1956). Hughes, Evidence § 332 (1961). The witness Clapp not only served as founder, president and general manager of ATT, but he also had purchased most of its inventory and equipment and had personally participated in taking inventory of the corporation's assets. In addition, he had purchased most of his own personal property (consisting principally of office furniture and related accessories). His definition of market value ("what a willing buyer would . . . pay for something on the open market") demonstrated an adequate understanding of the pertinent legal standard. The judge's rulings excluding the evidence were based on a misapprehension of the applicable law. This error was compounded by his haste to finish the trial in one day. The refusal to permit the plaintiffs' counsel to lay an appropriate foundation for testimony of value and to present otherwise competent evidence on that issue requires reversal.

Apart from this error, the judge's conduct throughout the trial is subject to serious criticism (see *Gauntlett* v. *Medical Parameters, Inc.*, 10 Mass. App. Ct. 88 [1980]), and separately warrants new trials. See

*Federal Natl. Bank* v. *O'Keefe,* 267 Mass. 75, 83 (1929); *Olson* v. *Ela,* 8 Mass. App. Ct. 165, 167-169 (1979).

The orders denying the defendants' motions for directed verdicts at the first trial in case No. 334982 are affirmed. The orders granting new trials in both cases are affirmed. The judgments entered on June 5 and 6, 1978, following the retrials, are reversed.

*So ordered.*

*Marshall F. Newman* for the plaintiffs.
*Edward C. Donlon* for the defendants.